# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
No. 13-799V
Filed: February 22, 2016
Not for Publication

```
*************************************
JESSICA FOUCH,                       *
                                     *
             Petitioner,             *
                                     *
v.                                   *
                                     *
SECRETARY OF HEALTH                  *
AND HUMAN SERVICES,                  *
                                     *
             Respondent.             *
                                     *
*************************************
```

Interim attorneys' fees and costs decision; respondent objects to interim fee award; good faith; reasonable basis; reasonable hourly rate; hours reasonably expended, reasonable costs; billing for administrative work

Diana L.S. Sedar, Sarasota, FL, for petitioner.
Jennifer L. Reynaud, Washington, DC, for respondent.

**MILLMAN, Special Master**

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On September 25, 2015, petitioner filed her Motion for Interim Attorneys' Fees and Costs, requesting $54,442.50 in interim attorneys' fees and $18,909.13 in costs. No decision on entitlement has been issued.

For the reasons set forth below, the undersigned awards petitioner $48,247.88 for interim attorneys' fees and costs incurred up to and including September 13, 2015, when petitioner's prior attorney, Jaime Moss, withdrew from the case.

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims's website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

## PROCEDURAL HISTORY

On October 15, 2013, petitioners Elizabeth and Andrew Fouch filed a petition on behalf of their daughter, Jessica Fouch, under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2012) ("Vaccine Act").  Petitioners alleged that their daughter suffered anaphylaxis as a result of the tetanus, diphtheria, and acellular pertussis ("Tdap") vaccination she received on June 18, 2011.  Pet. at 1.

The initial status conference was held on January 13, 2014.  During the status conference, the undersigned reviewed the medical records with the parties.  Petitioners' counsel expressed the desire to make a demand for a small amount and the undersigned ordered her to do so.

On January 17, 2014, the undersigned redacted Jessica Fouch's name from the case caption, because Jessica was a minor.  On the same date, petitioners' counsel contacted the undersigned's law clerk and said her clients did not wish to make a demand on respondent.  Petitioners' counsel also made an oral motion for leave to file an amended petition, which the undersigned granted in her January 17, 2014 Order.

Petitioners filed the amended petition on February 21, 2014.  In their amended petition, petitioners alleged that Jessica's receipt of Tdap vaccine led her to develop chronic headaches, inability to focus, chronic fatigue, joint pain, and a host of other symptoms.  See Am. Pet. at ¶ 46.  Petitioners also alleged that Jessica's injuries were caused by the vaccine adjuvants contained in the Tdap vaccine under the autoimmune/inflammatory syndrome induced by adjuvants ("ASIA") theory.  Id at ¶¶ 48-54.  Along with the amended petition, petitioners filed a letter from Dr. Deborah McCurdy stating that Tdap vaccine had caused Jessica to develop ASIA syndrome.  Ex. 28, at 1.

On March 25, 2014, petitioners filed a supplemental expert report by Dr. McCurdy.  Ex. 30.  In her report, Dr. McCurdy expounded on why she believed the Tdap vaccine had caused Jessica's injuries.  Id.  Her reasoning was based on the fact that Jessica was generally healthy and had no symptoms before her Tdap shot, but had a fever and swollen arm the evening after the vaccination and developed chronic headaches, fatigue, and weakness in the weeks following her vaccination.  Id. at 3.

On April 11, 2014, the undersigned held a telephonic status conference in which petitioners' counsel reported Jessica had appointments with a neuropathologist and a pain clinic.  Petitioners filed these records on June 11, 2014.  See med. recs. Ex. 31, 32.

On June 27, 2014, petitioners filed photographs of Jessica as a healthy young woman before the Tdap vaccination and looking emaciated after her receipt of the vaccine.  Ex. 33.

On September 10, 2014, respondent filed expert reports by Dr. Edward W. Cetaruk, a toxicologist, and Dr. J. Lindsay Whitton, an immunologist.  See Exs. A and C.  Dr. Cetaruk's report discussed the ASIA theory, specifically whether there is a "causal relationship between vaccine adjuvants and the development of autoimmune disease," as Dr. Yehuda Shoenfeld,

whose theory Dr. McCurdy followed in her expert report, proposes.  Ex. A, at 1.  Dr. Cetaruk concluded that Dr. Shoenfeld "fails to establish a reliable basis to support his causation theory that adjuvants found in vaccines cause ASIA syndrome and/or autoimmune disease."  Id. at 10. Dr. Whitton came to the same conclusion in his expert report.  Ex. C, at 16.

On September 17, 2014, respondent filed her Rule 4(c) Report, along with an expert report by Dr. Carlos D. Rose, a professor of pediatrics.  Resp't's Rep.; Ex. E.  In his report, Dr. Rose noted that Jessica had reported headaches before her Tdap vaccine, that headaches are extremely common in children and adolescents, and, that even though Jessica reported more frequent and severe headaches after the vaccination than she did before the vaccination, this was not related to her vaccination because her medical records do not reveal any autoimmune or inflammatory condition.  Ex. E, at 17.

During a status conference on September 24, 2014, the undersigned ordered petitioners to file a second supplemental report from Dr. McCurdy responding to respondent's expert reports. In her supplemental report filed on December 3, 2014, Dr. McCurdy proposed that while "science is not yet advanced sufficiently to accurately determine individuals who will have an aberrant immune response to vaccines and adjuvants in certain vaccines," the temporal relationship between Jessica's receipt of the Tdap vaccine and her symptoms shows that the vaccine caused Jessica's injuries.  Ex. 34, at 2; Id. at 8.  Petitioners filed a letter from Dr. Joshua Davidson, an immunologist, who linked Jessica's injuries to the Tdap vaccine using the ASIA theory, as well as letters from Dr. Ruth Demonteverde, a pediatrician, Galina Marinova, Jessica's gymnastics coach, and Andrew Fouch, Jessica's father.  Exs. 36, 38, 39, 40.

On December 11, 2014, the undersigned ordered respondent to file supplemental reports from her experts.   Respondent filed the supplemental reports on March 26, 2015.  Exs. G, H, and I.  All of respondent's experts rejected petitioner's ASIA theory and rejected the notion that the Tdap vaccination caused Jessica's injuries.  See Exs. I, at 7 ("Dr. McCurdy's report's reference to ASIA does not properly examine this condition either generally as the cause of any post-vaccination illness or injury or specifically as the cause of Jessica Fouch's headaches.").

On April 1, 2015, the undersigned held a telephonic status conference in which she asked the parties to provide possible hearing dates for this case.

On May 20, 2015, petitioners filed a motion to amend the case caption in the case because Jessica had reached the age of majority.  The undersigned granted their motion on the same day.

On June 11, 2015, the undersigned issued an Order informing the parties of a decision in a similar case, in which a judge on the U.S. Court of Federal Claims affirmed a special master's dismissal of a claim alleging injuries from an HPV vaccination based on the ASIA theory. Rowan v. Sec'y of HHS, No. 10-272V, 2014 WL 3375588 (Fed. Cl. Spec. Mstr. June 19, 2014), aff'd, 2015 WL 3562409 (Fed. Cl.), appeal dismissed, No. 15-5119 (Fed. Cir. 2015) (petitioner failed to file appellate brief within time allotted; dismissed for failure to prosecute).

The undersigned conducted a status conference on July 7, 2015, during which petitioner's counsel informed the undersigned that petitioner was seeking specialists to determine the correct diagnosis and treatment for her condition.  Petitioner filed updated medical records on September 1, 2015.  She stated that her new doctor, Dr. William P. Stuppy, had diagnosed her with dysautonomia, which is a disease of the nervous system.  See med. recs. Ex. 41, at 2.

During a status conference on September 1, 2015, the undersigned reviewed the medical records with the parties and asked petitioner to update her medical records.

On September 25, 2015, petitioner filed a Motion for Interim Attorneys' Fees and Costs. Petitioner filed a Motion to Substitute Attorney on October 12, 2015, asking to substitute Diana L. Stadelnikas Sedar for Jaime E. Moss, which was granted on October 13, 2015.  Respondent filed her response to petitioner's interim attorneys' fees application on November 9, 2015. Petitioner filed her reply to respondent's response on November 13, 2015.  On January 29, 2016, after several requests from the undersigned, petitioner filed an invoice for Dr. McCurdy's work on this case.

This matter is now ripe for adjudication.

## FACTUAL HISTORY

Jessica was generally healthy before receiving Tdap vaccine on June 18, 2011, when she was fourteen years old.  Med. recs. Ex. 2 at 1.

On June 22, 2011, four days after receiving the Tdap vaccination, petitioner visited the emergency room due to pain and swelling in her arm.  Med. recs. Ex. 4, at 1.  Dr. Peter J. Georgio diagnosed her with a possible reaction to the preservative in Tdap vaccine.  Id.  During a check up on June 28, 2011, petitioner reported to Dr. Maria Lui, her pediatrician, that she had experienced chronic headaches and dizziness since receiving Tdap vaccine.  Med. recs. Ex. 5, at 1-2.  Dr. Lui thought Jessica's headaches could be related to the preservative in Tdap vaccine. Id. at 3.

Petitioner visited a variety of doctors reporting headaches, dizzy spells, and fatigue in the next few years, including pediatric neurologists, immunologists, a pediatric rheumatologist, a psychotherapist, an ENT, and a pediatric gastroenterologist.  See med. recs. Exs. 6-9, 11-12, 15, 31.  Between November 19, 2013 and May 21, 2014, Jessica lost 28 pounds, weighing 77 pounds during her visit to pediatric gastroenterologist Dr. Elaheh Vaheabnezhad on May 21, 2014.  Med. recs. Ex. 31, at 42.  Dr. Vaheabnezhad diagnosed Jessica with gastroparesis.  Id. at 44.

## DISCUSSION

I.      **Entitlement to Fees Under the Vaccine Act**

Under the Vaccine Act, a special master or the U.S. Court of Federal Claims may award fees and costs for an unsuccessful petition if "the petition was brought in good faith and there

was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013).

"Good faith" is a subjective standard. Hamrick v. Sec'y of HHS, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007). A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred. Turner v. Sec'y of HHS, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Petitioners are "entitled to a presumption of good faith." Grice v. Sec'y of HHS, 36 Fed. Cl. 114, 121 (Fed. Cl. 1996).

"Reasonable basis" is not defined in the Vaccine Act or Program rules. It has been determined to be an "objective consideration determined by the totality of the circumstances." McKellar v. Sec'y of HHS, 101 Fed. Cl. 297, 303 (Fed. Cl. 2011). In determining reasonable basis, the court looks "not at the likelihood of success [of a claim] but more to the feasibility of the claim." Turner, 2007 WL 4410030, at *6 (citing Di Roma v. Sec'y of HHS, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). Factors to be considered include factual basis, medical support, jurisdictional issues, and the circumstances under which a petition is filed. Turner, 2007 WL 4410030, at *6–*9. Traditionally, special masters have been "quite generous" in finding reasonable basis. Turpin v. Sec'y of HHS, No. 99-564V, 2005 WL 1026714, at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005); see also Austin v. Sec'y of HHS, 10-362V, 2013 WL 659574, at *8 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) ("The policy behind the Vaccine Act's extraordinarily generous provisions authorizing attorney fees and costs in unsuccessful cases—ensuring that litigants have ready access to competent representation—militates in favor of a lenient approach to reasonable basis."). Special masters have found reasonable basis to file a claim absent medical records or opinions supporting vaccine causation. See Austin, 2013 WL 659574, at *8; Hamrick, 2007 WL 4793152.

## A. Interim Fee Awards are Appropriate Under the Vaccine Act

The Federal Circuit ruled that interim fee awards are permissible under the Vaccine Act in Avera v. Secretary of Health and Human Services, 515 F.3d 1343, 1352 (Fed. Cir. 2008). The Federal Circuit again found interim fee awards appropriate under the Vaccine Act in Shaw v. Secretary of Health and Human Services, 609 F.3d 1372 (Fed. Cir. 2010). See also Cloer v. Sec'y of HHS, 675 F.3d 1358, 1361–62 (Fed. Cir. 2012), aff'd sub nom. Sebelius v. Cloer, 133 S. Ct. 1886 ("Congress made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act."); Vaccine Rule 13(b) (mentioning "interim fees").

Subsequently, a number of judges and many special masters have found interim fee awards permissible under various circumstances. See, e.g., Woods v. Sec'y of HHS, 105 Fed. Cl. 148, 154 (Fed. Cl. 2012) (Judge Williams affirmed the special master's award of interim fees and suggested that when counsel withdraws, and it is unclear how long case resolution might take, an interim award may be appropriate); Friedman v. Sec'y of HHS, 94 Fed. Cl. 323, 334 (Fed. Cl. 2010) (Judge Damich found that the statute permits interim fee awards and that the special master acted within his discretion in choosing not to award interim fees); Doe/11 v. Sec'y of HHS, 89 Fed. Cl. 661, 668 (Fed. Cl. 2009) (Judge Williams reversed the special master's

denial of interim fees); <u>Bear v. Sec'y of HHS</u>, No. 11-362V, 2013 WL 691963, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2013) (Special Master Hastings awarded interim fees over respondent's objection in a case where petitioner's counsel was going to withdraw, and the petition had been pending for more than 19 months); <u>Lumsden v. Sec'y of HHS</u>, No. 97-588, 2012 WL 1450520, at *6 (Fed. Cl. Spec. Mstr. Mar. 28, 2012) (former Chief Special Master Vowell awarded interim fees in an autism case over respondent's objection when petitioner's attorney was withdrawing from the case); <u>Edmonds v. Sec'y of HHS</u>, No. 04-87V, 2012 WL 1229149, at *13 (Fed. Cl. Spec. Mstr. Mar. 22, 2012) (then-Chief Special Master Campbell-Smith awarded interim fees over respondent's objection in an autism case in which petitioner's counsel was preparing to withdraw); <u>Dudash v. Sec'y of HHS</u>, No. 09-646V, 2011 WL 1598836, at *6 (Fed. Cl. Spec. Mstr. Apr. 7, 2011) (Special Master Moran found an award of interim fees appropriate); <u>Burgess v. Sec'y of HHS</u>, No. 07-258V, 2011 WL 159760, at *2 (Fed. Cl. Spec. Mstr. Jan. 3, 2011) (Former Special Master Lord awarded interim attorneys' fees in a case where petitioners were soon to be represented by other counsel).

### B.  Interim Fees are Appropriate in This Case

In <u>Avera</u>, the Federal Circuit held that while interim fees are not banned by the statute, they were not appropriate in that case because appellants sought only higher fees after dismissal of their case.  515 F.3d at 1352.  The Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained."  <u>Id.</u> In denying an interim fee award, the Federal Circuit reasoned, "The amount of fees here was not substantial; appellants had not employed any experts; and there was only a short delay in the award pending the appeal."  <u>Id.</u>

In <u>Shaw</u>, the Federal Circuit clarified that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees."  609 F.3d at 1375.  The U.S. Court of Federal Claims and several special masters have found an interim fee award appropriate when petitioner's counsel withdraws from the case.  <u>See</u> <u>Woods</u>, 105 Fed. Cl. at 154; <u>Bear</u>, 2013 WL 691963 at *5; <u>Lumsden</u>, 2012 WL 1450520 at *6; <u>Edmonds</u>, 2012 WL 1229149 at *13; <u>Burgess</u>, 2011 WL 159760 at *2.

### 1.  Good Faith & Reasonable Basis

Petitioner is entitled to a presumption of good faith, and respondent does not contest that the petition was filed in good faith.  Resp. at 6.  There is no evidence that this petition was brought in bad faith.  Therefore, the undersigned finds that the good faith requirement is met.

However, respondent does contest that this petition is supported by a reasonable basis. Respondent asserts that petitioner has the burden to affirmatively demonstrate reasonable basis, citing <u>McKellar v. Secretary of Health and Human Services</u>, 101 Fed. Cl. 297, 305 (2011).  She argues that there was no reasonable basis in this case because petitioner's former counsel was unable to demonstrate that petitioner "has a compensable, medically-recognized injury." Resp't's Response at 6.  Petitioner first claimed Tdap vaccine caused her to suffer anaphylaxis,

but later amended the petition to say she suffers from ASIA.  According to the status report petitioner filed on July 10, 2015, she is still searching for the correct diagnosis of her condition.

In contrast, petitioner asserts that she has met her burden of demonstrating reasonable basis.  Petitioner argues that the undersigned should take into consideration that petitioner is suffering from an autoimmune illness.  As autoimmune illnesses have similar symptoms and often involve periods of remission and flare-ups, they are "difficult to diagnose," petitioner contends.  Reply at 4.  Petitioner also notes that her claim was supported by the expert reports of Dr. McCurdy and Dr. Davidson.  Id.

        Petitioner's medical records support that she had the injuries complained of in the petition, namely chronic headaches, inability to focus, chronic fatigue, and joint pain.  See, e.g., med. recs. Ex. 5, at 3 (petitioner complained to her pediatrician that she had chronic headaches); med. recs. Ex. 8, at 1 (during a visit to a neurologist, Jessica said she was suffering from fatigue); med. recs. Ex. 31, at 19 (petitioner's father noted to Dr. McCurdy that his daughter had experienced "weakness, brain fog, vision changes, myopathy, and abdominal pain").  Moreover, as demonstrated in petitioner's Exhibit 33, Jessica lost an extreme amount of weight after receiving Tdap vaccine, suggesting that she was ill.  See Ex. 33.  Dr. McCurdy was willing to support petitioner's claim that the vaccine caused Jessica's symptoms using the ASIA theory.  While ASIA is not widely accepted by the medical community, Dr. McCurdy is a reputable doctor with excellent credentials, and her support of petitioner's theory gave petitioner a reasonable basis to move forward with her claim.  See generally Ex. 35 (Dr. McCurdy has been the director of the rheumatology division of the Children's Hospital of Orange County since 1997, is a clinical professor at UCLA Medical School, and has published over 50 peer-reviewed research papers).  Dr. Davidson was also willing to support petitioner's case.  Therefore, the undersigned finds that petitioner had a reasonable basis to bring this claim, at least up until the withdrawal of her former attorney, Ms. Moss.

### 2.  Protracted Proceedings

Additionally, interim attorneys' fees and costs are appropriate because waiting for the conclusion of the case would place an undue hardship on petitioner.  As previously mentioned, many special masters have found that the withdrawal of counsel can constitute undue hardship.  See Woods, 105 Fed. Cl. at 154; Bear, 2013 WL 691963 at *5; Lumsden, 2012 WL 1450520 at *6; Edmonds, 2012 WL 1229149 at *13; Burgess, 2011 WL 159760 at *2.  Petitioner's case has been pending for more than two years.  While petitioner has retained new counsel, her new counsel is seeking medical records from ten doctors.  See Order dated September 1, 2015.  As of her last status update on September 2, 2015, petitioner is still seeking the correct diagnosis of her condition.  If petitioner decides to continue pursuing this claim, it may be months to years before an entitlement ruling is issued.  Thus, the undersigned rejects respondent's objection to an award of interim fees and costs at this juncture and finds an award of interim fees and costs appropriate.

## II.        Reasonableness of Requested Attorneys' Fees and Costs

### A.  Reasonable Attorneys' Fees

Counsel must submit fee requests that include contemporaneous and specific billing entries indicating the task performed, the number of hours expended on the task, and who performed the task.  See Savin v. Sec'y of HHS, 85 Fed. Cl. 313, 316–18 (Fed. Cl. 2008). Counsel must not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary."  Saxton v. Sec'y of HHS, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id.  Furthermore, the special master may reduce fees *sua sponte*, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond.  See Sabella v. Sec'y of HHS, 86 Fed. Cl. 201, 208–09 (Fed. Cl. 2009).  A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees.  Broekelschen v. Sec'y of HHS, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

### 1.  Hourly Rates

A reasonable hourly rate is "the prevailing market rate defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Id. (citation and quotation omitted).  In Avera, the Federal Circuit found that in Vaccine Act cases, a court should use the forum rate, i.e., the DC rate, in determining an award of attorneys' fees.  515 F.3d 1343 at 1349.  At the same time, the court adopted the Davis County exception to prevent windfalls to attorneys who work in less expensive legal markets.  Id. (citing Davis County Solid Waste Mgmt. & Energy Recovery Spec. Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755 (D.C. Cir. 1999)).  In cases where the bulk of the work is completed outside the District of Columbia, and there is a "very significant difference" between the forum hourly rate and the local hourly rate, the court should calculate an award based on local hourly rates.  Id. (finding the market rate in Washington, DC to be significantly higher than the market rate in Cheyenne, Wyoming).

Ms. Moss asks for a rate of $350.00 for her work on this case.  She bases her request partly on the rate awarded for her work on a case in the United States District Court for the Central District of California.  See Fee App. at 3; Nestade v. AstraZeneca Pharmaceuticals LP et al., No. 5:14-cv-01088-VAP-JPR (Order Granting Request for Attorney Fees, Dec. 16, 2014). Respondent contends that the rate is unreasonable, as this is petitioner's first case in the Vaccine Program.  Resp't's Resp. at 9.  Respondent also disagrees with petitioner's contention that Ms. Moss received $300.00 for the work she performed in Nestade in 2014, as, while Ms. Moss asked for a rate of $300.00, the Court reduced the attorneys' fees and costs award by 20%.  Id. Respondent also notes that the undersigned should focus on rates awarded in the Vaccine Program, not in other federal courts, as the work done in the Vaccine Program is very different from that done in other federal courts.  Id. at 10 (citing Isaac v. Sec'y of HHS, No. 08-601V, 2012 WL 3609993, at *18 (Fed. Cl. Spec. Mstr. July 30, 2012), mot. for review den'd, 108 Fed. Cl. 743 (2013), aff'd, 5490 Fed. App's 999 (Fed. Cir. 2013)).  She notes that Lisa A. Roquemore, a lawyer with "extensive familiarity with the Vaccine Program," was awarded $355.00 an hour for her attorney work, and $135.00 for paralegal work.  See id. at 10; Guerro v. Sec'y of HHS, No. 12-689V, 2015 WL 3745354 (Fed. Cl. Spec. Mstr. May 22, 2015).

In her reply to respondent's response, petitioner argues that Ms. Moss's requested hourly rate is reasonable because, while she was admitted to the Bar in December 2012, she "graduated at the top of her UCLA undergraduate class, top of her law school class, and was published." Reply at 6. Ms. Moss states that what she "lacks in experience and years admitted to the bar, she makes up for in determination, diligence, and dedication in pursuing this claim." Id. She also notes that she took on the case herself instead of requesting assistance from a senior attorney. Finally, she agrees with McCulloch that plaintiff's personal injury work is the type of legal work that is most similar to the work done in the Vaccine Program, and states that her law practice focuses on plaintiffs' pharmaceutical litigation. Id. at 7; McCulloch v. Sec'y of HHS, No. 09-293V, 2015 WL 5634323, at *12 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

The undersigned agrees with respondent's assertion that the analysis of Ms. Moss's hourly rate should focus on the hourly rates awarded in the Vaccine Program. While petitioner is correct that McCulloch said that the work done by lawyers in the Vaccine Program is most analogous to plaintiff's personal injury work, McCulloch also noted that the comparison "has many dissimilarities and suffers from the same lack of comparability as most other areas of practice," because most personal injury work involves contingent fees. 2015 WL 5634323, at *18. As the work done in the Vaccine Program is "highly specific in its form and substance," the undersigned will focus on rates awarded in the Vaccine Program. Isaac, 2012 WL 3609993, at *18. Moreover, the undersigned will determine Ms. Moss's appropriate hourly fee based on forum rates because the bulk of Ms. Moss's work was performed in Los Angeles, California, and there is not a "very significant difference" between the Washington, DC hourly rate and the hourly rate in Los Angeles. Avera, 515 F.3d at 1349.

This was Ms. Moss's first case in the Vaccine Program. Her requested hourly rate of $350.00 is just $5.00 less than the rate awarded to Ms. Roquemore, who has had many years of experience in the Program. See Guerro, 2015 WL 3745354. Moreover, in McCulloch, Special Master Gowen awarded Mr. Homer and Ms. Chin-Caplan, attorneys with more than 20 years of experience, $400.00 in attorneys' fees. McCulloch, 2015 WL 5634323, at *28. While the undersigned has no doubt that Ms. Moss is a determined, diligent, and dedicated attorney, her inexperience in the Vaccine Program is obvious as she records many hours researching the Program's rules and procedures (which, as the undersigned will explain below, Ms. Moss cannot bill for). Moreover, Ms. Moss argues that her hourly rate is justified partly because she did not request assistance from a more senior attorney. However, the undersigned can only compensate Ms. Moss based on the amount of experience that she herself has. Due to Ms. Moss's inexperience in the Vaccine Program, the undersigned finds that an hourly fee of $350.00 is not justified, and awards $275.00 per hour for her work, which is $5.00 less than the rate awarded to attorneys in Homer, Conway, and Chin-Caplan with four to seven years' experience in McCulloch. Id. **Therefore, using an hourly rate of $275.00 for the 155.55 hours Ms. Moss billed for working on this case, the total amount that petitioner requests is $42,776.25.**

## 2. Hours Reasonably Expended

The lodestar approach requires that the reasonable hourly rate be multiplied by the

number of hours "reasonably expended on the litigation." <u>Avera</u>, 515 F.3d at 1347-48 (quotation and citation omitted).  Counsel must submit fee requests that include contemporaneous and specific billing entries, indicating the task performed, the number of hours expended on the task, and who performed the task.  See <u>Savin ex rel. Savin v. Sec'y of HHS</u>, 85 Fed. Cl. 313, 315-18 (Fed. Cl. 2008).  Counsel must not include in their fee request hours that are "excessive, redundant, or otherwise unnecessary." <u>Saxton</u>, 3 F.3d at 1521 (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983)).  It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." <u>Id.</u>  Furthermore, the special master may reduce hours *sua sponte,* apart from objections raised by respondent and without providing petitioner notice and opportunity to respond.  See <u>Sabella v. Sec'y of HHS</u>, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009).

Respondent has a number of specific objections to items in petitioner's fee application.  In particular, respondent objects to the amount of time Ms. Moss billed for drafting the petition and the amended petition, researching and drafting a request for expedited settlement track, and administrative tasks.  Resp't's Resp. at 10-11.  In response to all of respondent's objections to the amount of time Ms. Moss billed, petitioner states that the time billed was reasonable and supported by specific and clear documentation.  Reply at 5-6.  Petitioner argues that if respondent had an issue with the attorneys' fees she asked for, "a negotiation would have been warmly welcomed," which petitioner says respondent refused to do despite petitioner's several attempts to reach out to respondent, even though the "Guidelines encourage discussions." <u>Id.</u>  The undersigned notes that, while the Guidelines for Practice do encourage discussion, discussion is not required for the undersigned to award attorneys' fees and costs.   The undersigned will address each of respondent's objections to items in petitioner's fee application in turn.  The undersigned also *sua sponte* finds that it is appropriate to reduce the hour Ms. Moss billed for time spent researching the Vaccine Rules.

### i.    Drafting the petition and amended petition

Respondent argues that the hours Ms. Moss billed for drafting the petition and amended petition are unreasonable.  <u>See</u> Resp't's Resp. at 10.  Specifically, respondent objects to the time Ms. Moss spent drafting the original petition, because petitioners claimed Jessica had anaphylaxis when that contention was not supported by the medical records. <u>Id.</u> at 11.  Petitioner spent approximately 36 hours researching and drafting the petition (respondent states that Ms. Moss spent 36.25 hours drafting the original petition but the billings indicate that she spent 36 hours drafting the petition).  Ms. Moss then spent about 20 hours researching and drafting the amended petition.

The undersigned finds that the time Ms. Moss billed for drafting the petition and the amended petitioner is excessive.  Petitioner spent approximately 56 hours drafting the original and amended petitions, which, as respondent noted, is approximately one-third of the time Ms. Moss spent on this case.  Resp't's Resp. at 10.   The undersigned reduces the amount Ms.

Moss billed for drafting the original and amended petitions, which is $15,400.00 using her adjusted rate of $275.00, by 25%. Therefore, the undersigned reduces Ms. Moss' fees by **$3,850.00**.

### ii.    Administrative work

Billing for clerical and other secretarial work is not permitted in the Vaccine Program. See Rochester v. United States, 18 Cl. Ct. 379, 387 (1989) (denying an award of fees or time billed by a secretary, finding that these "services . . . should be considered as normal overhead office costs included within the attorneys' fee rates"). Ms. Moss billed approximately 14.5 hours performing administrative work.[2] This includes time billed for tasks such as picking up medical records from petitioner's porch, printing respondent's expert reports, scanning and copying medical records, and waiting on hold to speak to a doctor for 20 minutes and ultimately not being able to reach him that day. Fee App. Ex. A, at 1-5. Petitioner will not be compensated for this time. Therefore, the undersigned reduces Ms. Moss' fees by **$3,987.50**.

### iii.    Researching the Vaccine Rules

Finally, the undersigned *sua sponte* reduces petitioner's fee request for the time Ms. Moss billed for researching the Vaccine Program and Vaccine Rules. Ms. Moss spent approximately 6.5 hours on researching the Vaccine Rules. For example, on June 24, 2013, Ms. Moss billed time for "perform[ing] research on filing a petition in Vaccine Court." Fee App. Ex. A, at 1. On September 11, 2013, she billed time for "look[ing] through all rules to determine requirements for filing." Id. On June 26, 2016, Ms. Moss billed time for researching the Vaccine Court Rules and Guidelines when drafting petitioner's application for interim attorneys' fees and costs. Id. at 6.

Many special masters, including the undersigned, have held that it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program. In Calise v. Secretary of Health and Human Services, the undersigned reduced petitioner's counsel's billings for "research into the elementary principles of vaccine litigation," noting,

---

[2] The undersigned had to estimate the hours spent by Ms. Moss on administrative tasks due to the way Ms. Moss' billing entries are written. The undersigned appreciates that Ms. Moss described the time she billed in detail. However, many of Ms. Moss' billing entries lump several different tasks into one block of time. For example, on June 27, 2014, Ms. Moss billed 2.50 hours, noting she "[c]ontinued to study [medical records] in preparation for status [conference] call. Had status conference call 11 am-11:50 am. Took notes after. Composed/formatted exhibit, and filed the picture of Jessica before/after the vaccine as Exhibit 33. Emailed Fouch with the update on the case." Fee App. Ex. A, at 3. The Vaccine Program's Guidelines for Practice state, "[e]ach task should have its own line entry indicating the amount of time spent on that task. Several tasks lumped together with one time entry frustrates the court's ability to assess the reasonableness of the request." Guidelines for Practice Under the National Vaccine Injury Compensation Program at 68 (revised January 7, 2016) found at http://www.uscfc.uscourts.gov/sites/default/files/GUIDELINES-FOR-PRACTICE-1-7-16.pdf (last visited on February 10, 2016) (Section X, Chapter 3, Part B(1)(b)).

"basic education [is] not compensable under the Program." No. 08-865V, 2011 WL 2444810, at *5 (Fed. Cl. Spec. Mstr. June 13, 2011). In Tison v. Secretary of Health and Human Services, former Special Master Baird found that petitioner's counsel had "spent an excessive amount of time researching and reviewing the statute and legislative history." No. 89-43V, 1990 WL 293369, at *2 (Cl. Ct. Spec. Mstr. May 25, 1990). In another case, Special Master Hamilton-Fieldman reduced petitioner's counsel's fees for time spent on basic legal research, stating that one test for whether the hours billed by counsel are reasonable is "whether a hypothetical petitioner, who had to use his own resources to pay his attorney for Vaccine Act representation, would be willing to pay for such expenditure," citing Riggins v. Secretary of Health and Human Services, No. 99–382V, 2009 WL 3319818, at *3 (Fed. Cl. Spec. Mstr. June 15, 2009), mot. for rev. denied (Fed. Cl. Dec. 10, 2009), aff'd, 406 Fed. Appx. 479 (Fed. Cir. 2011). O'Neill v. Sec'y of HHS, No. 08-243V, 2015 WL 2399211, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2015). Petitioner would surely not find it reasonable to pay for her counsel to perform basic research on the Vaccine Rules.

This reasoning also applies to the time Ms. Moss billed for researching and drafting a request for expedited settlement track. Ms. Moss billed 9.5 for researching and preparing a request for expedited settlement track, even though respondent had not indicated she was interested in pursuing expedited settlement. The undersigned finds that the time petitioner spent on these tasks was not reasonable. Therefore, the undersigned reduces petitioner's fee request by **$4,400.00**.

### B. Reasonable Attorneys' Costs

Attorneys' costs must be reasonable as well. See Perreira v. Sec'y of HHS, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992) ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both. Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs.").

### 1. Expert Fees

Respondent objects to the request for $18,000.00 in expert fees for Dr. Deborah McCurdy, arguing that "no invoice has been provided that would support the reasonableness of the time spent," and that, as petitioner's treating rheumatologist, Dr. McCurdy should have already been familiar with petitioner's medical history and diagnosis. Resp't's Resp. at 12. In her reply, petitioner asserts that she filed Dr. McCurdy's CV to substantiate her rate of $450.00 per hour. Reply at 5; Tab C. Petitioner filed Dr. McCurdy's invoice on January 29, 2016. Ex. 46. In an e-mail sent to the undersigned's law clerk on February 4, 2016, respondent stated that she maintains her objections to the reasonableness of Dr. McCurdy's fees, arguing that the "skeletal invoice" that is obviously "not a contemporaneous record" does not provide sufficient detail to support the reasonableness of petitioner's request.

Dr. McCurdy indicates she spent eighteen hours reviewing medical literature, ten hours preparing her report, and fourteen hours reviewing respondent's expert reports and preparing a responsive expert report. Id. at 1. While it is true that as petitioner's treating rheumatologist, Dr. McCurdy should have had more familiarity with petitioner's medical records than an expert who did not treat petitioner, the undersigned considers a total of 42 hours to review medical records and research and draft an opinion to be reasonable.

However, there is a discrepancy between petitioner's interim attorneys' fees and costs application and the invoice petitioner filed. Petitioner's motion indicates that Dr. McCurdy worked on the case for 40 hours and asked for a rate of $450.00 per hour, for a total of $18,000.00. Fee App. at 4. The invoice indicates that Dr. McCurdy worked on the case for 42 hours at a rate of $400.00 per hour, for a total of $16,800.00. Ex. 46, at 1. The undersigned finds that it is most appropriate to award Dr. McCurdy a rate of $400.00 an hour for 42 hours of work, as that is the amount substantiated by her invoice. Therefore, the undersigned reduces petitioner's award for interim costs by **$1,200.00**.

## CONCLUSION

The undersigned finds an award of interim attorneys' fees and costs appropriate. In sum, the undersigned awards petitioner the following amount for attorneys' fees and costs:

Initial Fee Application:

| | |
|---|---|
| Requested Attorneys' Fees: | $54,442.50 |
| Adjustment for rate of $275.00 per hour: | $11,666.25 |
| Reductions: | $12,237.50 |
| Attorneys' Fees Awarded: | **$30,538.75** |
| | |
| Requested Attorneys' Costs: | $18,909.13 |
| Reductions: | $1,200.00 |
| Attorneys' Costs Awarded: | **$17,709.13** |

| | |
|---|---|
| Total Requested Fees & Costs: | $73,351.63 |
| Total Fees & Costs Awarded: | **$48,247.88** |

Accordingly, the court awards **$48,247.88**, representing interim attorneys' fees and costs. The award shall be in the form of a check made payable jointly to petitioner and Lenze Kamerrer Moss, PLC, in the amount of **$48,247.88**.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[3]

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.

**IT IS SO ORDERED.**

Dated: <u>February 22, 2016</u>                                          <u>/s/ Laura D. Millman</u>
                                                                                            Laura D. Millman
                                                                                            Special Master