# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 13-799V
### Filed: August 25, 2020
UNPUBLISHED

| | |
|---|---|
| JESSICA FOUCH,<br><br>     Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Special Master Horner<br><br><br>Interim Attorneys' Fees and<br>Costs Decision; Reasonable<br>Basis |

*Renee J. Gentry, Vaccine Injury Clinic, George Washington Univ. Law School, Washington, DC , for petitioner.*
*Jennifer Leigh Reynaud, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On March 17, 2020, petitioner filed a second motion[2] for an award of interim attorneys' fees and costs in the amount of $43,121.90 for her prior counsel, Diana Stadelnikas. (ECF No. 133.) In response, respondent stated that "[s]hould the Special Master be satisfied that the reasonable basis and interim fee award standards are met in this case, respondent respectfully requests that the Court exercise its discretion and determine a reasonable award for attorneys' fees and costs." (ECF No. 141.) For the reasons discussed below, I award petitioner interim attorneys' fees and costs in the reduced amount of $37,346.21.

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

[2] This is petitioner's third motion for interim attorneys' fees and costs overall, but second motion for an award for Ms. Stadelnikas.

## I.      Procedural History

On October 15, 2013, petitioner filed this claim, under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10-34 (2012), alleging that as a result of her June 18, 2011 Tdap vaccination she suffered a Table injury, anaphylaxis.[3]  (ECF No. 1.)  This case was originally assigned to Special Master Millman.  (ECF No. 2.)  On February 21, 2014, petitioner filed an amended petition, alleging that her June 18, 2011 Tdap vaccination caused her autoimmune/inflammatory syndrome induced by adjuvants ("ASIA").  (ECF No. 12.)  Along with the amended petition, petitioner filed a letter from Dr. Deborah McCurdy to support her claim.  (ECF No. 12; Ex. 28.)  Subsequently, petitioner filed a supplemental expert report from Dr. McCurdy on March 25, 2014.  (ECF No. 15.)

In response, respondent filed expert reports from Drs. Edward W. Cetaruk, J. Lindsay Whitton, and Carlos D. Rose.  (ECF Nos. 23, 26.)  Additionally, on September 17, 2014, respondent filed his Rule 4(c) report, recommending against compensation. (ECF No. 26.)  Thereafter, petitioner filed a second supplemental report from Dr. McCurdy and letters from Dr. Joshua Davidson, immunologist, and Dr. Ruth Demonteverde, pediatrician.  (ECF No. 31.)  Respondent then also filed supplemental reports from his three experts.  (ECF No. 37.)  Special Master Millman intended to schedule an entitlement hearing in this case; however, petitioner wished to file an expert report from Dr. Yehuda Shoenfeld and was also undergoing additional treatment. Therefore, no entitlement hearing was scheduled.  (ECF Nos. 38, 42.)

On September 25, 2015, petitioner filed a motion for interim attorneys' fees and costs on behalf of her first attorney, Jaime E. Moss.  (ECF No. 48.)  Special Master Millman granted petitioner's motion for interim attorneys' fees and costs for Ms. Moss on February 22, 2016, awarding $48,247.88 in interim attorneys' fees and costs incurred up to and including September 13, 2015, when Ms. Moss withdrew from this case. (ECF No. 60.)  Special Master Millman indicated that "petitioner had a reasonable basis to bring this claim, at least up until the withdrawal of her former attorney, Ms. Moss." (*Id.* at 7.)  Additionally, contrary to respondent's objection against expert fees for Dr. McCurdy, Special Master Millman awarded petitioner a reduced amount of $16,800.00 in expert fees for Dr. McCurdy, representing an hourly rate of $400.00 for 42 hours of work performed.  (*Id.* at 13.)

On October 12, 2015, Diana L. Stadelnikas was substituted as the attorney of record in place of Ms. Moss.  (ECF No. 49.)  Initially she collected and filed additional medical records. However, during a status conference on January 5, 2017, petitioner's counsel indicated that she would not file any additional expert reports and that she intended to withdraw from this case.  (ECF No. 75.)  Subsequently, petitioner filed a motion for interim attorneys' fees and costs incurred by Ms. Stadelinkas.  (ECF No. 77.) Additionally, petitioner's counsel's motion to withdraw was granted and petitioner proceeded *pro se.*  (ECF Nos. 78, 82.)  On April 24, 2017, Special Master Millman denied petitioner's motion for interim attorneys' fees and costs for Ms. Stadelnikas,

---

[3] Initially the petition was brought on behalf of petitioner by her parents as she was a minor at that time.

ruling that "it is premature for the undersigned to decide whether petitioner's case continued to have a reasonable basis after her first attorney, Ms. Moss, withdrew." (ECF No. 87.)  Special Master Millman, however, indicated that it is possible the petitioner's new attorney may prove vaccine causation in this case, but that "[t]he undersigned simply does not have enough information to determine the issue of reasonable basis at this juncture in the case."  (*Id.* at 2.)

On May 9, 2017, Renee J. Gentry was substituted as counsel.  (ECF No. 88.) Petitioner then filed an expert report from Drs. Judy Mikovitz and Frank Ruscetti.[4]  (ECF No. 99.)  This case was then reassigned to my docket on June 5, 2019 upon Special Master Millman's retirement.  (ECF No. 120.)  On September 9, 2019, petitioner filed an expert report from Dr. Shoenfeld.  (ECF No. 122.)  In response, respondent filed additional supplemental reports from Drs. Whitton and Rose.

Petitioner filed this instant motion for interim attorneys' fees and costs on March 17, 2020.  (ECF No. 133.)  Respondent filed four motions for an extension of time to file his response to petitioner's motion for interim attorneys' fees and costs.  (ECF Nos. 134, 137, 138, 140.)  Thereafter, on July 24, 2020, respondent filed his response, deferring to the special master in all regards.  (ECF No. 141, p. 4.)  Respondent's response mostly consisted of boilerplate language that respondent has filed in many other cases indicating that respondent no longer has sufficient resources to provide detailed objections and requesting the special master exercise his discretion to determine the appropriateness of petitioner's request.[5]  (*Id.* at n.2.)  Petitioner did not file a reply.

Accordingly, petitioner's motion for interim attorneys' fees and costs is now ripe for resolution.

## II.   Discussion

### a.   An Award of Interim Attorneys' Fees and Costs is Appropriate

Section 15(e)(1) of the Vaccine Act allows the special master to award "reasonable attorneys' fees, and other costs."  § 300aa–15(e)(1)(A)–(B).  Petitioners are entitled to an award of reasonable attorneys' fees and costs if they receive compensation under the Vaccine Act, or, even if they are unsuccessful, if the special

---

[4] However, this report was later struck from the record on March 31, 2020, following petitioner's motion to strike.  (ECF No. 132.)

[5] In his response to Ms. Moss's motion for interim attorneys' fees and costs, subsequently granted by Special Master Millman, respondent argued this case lacked a reasonable basis.  (ECF No. 51.)  In his response to Ms. Stadelnikas's first motion for interim fees and costs, subsequently denied by Special Master Millman, respondent renewed the arguments presented in his response to the first interim fee motion.  (ECF No. 80.)  In response to the instant motion, respondent does not take any position regarding whether this petition has a reasonable basis.  (ECF No. 141.)  Respondent did, however, challenge the credibility of the Mikovits and Ruscetti report filed by current counsel, which may remain relevant regarding attorneys' fees and costs relative to any later motion filed by current counsel of record. (*Id.* at n.1.)

master finds that the petition was filed in good faith and with a reasonable basis.  *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008).  Stressing the absence of any prevailing party requirement under the Vaccine Act, the Federal Circuit has held in *Avera* that interim awards for attorneys' fees and costs are appropriate under the Vaccine Act.  *Id.* (citing §300aa-15(e)(1)).  The Circuit noted that interim awards are "particularly appropriate in cases where proceedings are protracted and costly experts must be retained."  *Id.*  Subsequently, in *Shaw v. Secretary of Health & Human Services*, the Federal Circuit reiterated its *Avera* standard, noting that "[w]here the claimant establishes that the cost of litigation has imposed an undue hardship and that there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees."[6]  609 F.3d 1372, 1375 (Fed. Cir. 2010).

"Good faith" is a subjective standard.  *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).  A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred.  *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).  The standard for finding good faith has been described as "very low," and findings that a petition lacked good faith are rare.  *Heath v. Sec'y of Health & Human Servs.*, No. 08-86V, 2011 WL 4433646, *2 (Fed Cl. Spec. Mstr. Aug. 25, 2011).  After multiple motions for interim attorneys' fees and costs, petitioners' good faith has never been disputed throughout the pendency of this case. (*See* ECF Nos. 51, 80, 141.)

In contrast, the question of whether a claim has a "reasonable basis" is objective and must be affirmatively established by the petitioner.  *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 305 (2011).  The special master looks "not at the likelihood of success [of a claim] but more to the feasibility of the claim."  *Turner*, 2007 WL 4410030, at *6 (citing *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)).  The claim of a "reasonable basis" must be based on more than "unsupported speculation."  *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994).

The reasonable basis determination is "an objective inquiry unrelated to counsel's conduct."  *Simmons v. Sec'y of Health & Human Servs.*, 128 Fed. Cl. 579, 582 (2016), *aff'd*, 875 F. 3d 632, 636 (Fed. Cir. 2017).  However, a special master may assess "a variety of other factors," including "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation."  *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282 (2018); *accord Cottingham v. Sec'y of Health & Human Servs.*, --- F.3d ----, 2020 WL 4810095 (Fed. Cir. 2020).  "A claim can lose its reasonable basis as the case

---

[6] Multiple applications for interim attorneys' fees and costs are ordinarily disfavored absent unusual circumstances. *Accord Kottenstette v. Sec'y of Health & Human Servs.*, 15-1016V, 2019 WL 5709372 (Fed. Cl. Spec. Mstr. Oct. 11, 2019) (finding a second award of interim fees reasonable where, *inter alia*, the court entertained a stay of proceedings while review was pending). Here, given the length of time since Ms. Stadelnikas withdrew as counsel and the current posture of the case, I find that this application is reasonable.

progresses." *R.K. v Sec'y of Health & Human Servs.*, 760 Fed. Appx. 1010, 1012 (Fed. Cir. 2019) (citing *Perreira*, 33 F.3d at 1376-77).

Here, despite a protracted and ongoing history, the instant motion involves only the fraction of this case's history during which petitioner's second attorney, Diana Stadelinkas, was counsel of record. Initially, when Ms. Stadelinkas withdrew as counsel, Special Master Millman denied her motion for interim attorneys' fees and costs, suggesting that it was premature at that time to assess reasonable basis. (ECF No. 87.) For the reasons discussed below, however, I conclude on this renewed motion seeking the same fees and costs that the subsequent history in this case reveals in hindsight that Ms. Stadelnikas's approach to the case was distinct from the path taken by succeeding counsel. Accordingly, it no longer appears necessary to await petitioner's ultimate success or failure based on her current theory to determine whether this case previously had a reasonable basis during the period when it was prosecuted by Ms. Stadelnikas. Moreover, I find that the case did have a reasonable basis at that time.

When petitioner's first attorney of record, Jaime Moss, departed from this case, Special Master Millman addressed reasonable basis in the context of a motion for an award of interim fees for former counsel.[7] (ECF No. 60.) By that time, multiple expert reports had been exchanged. Respondent had filed expert reports by immunologist Lindsay Whitton, M.D., Ph.D., toxicologist Edward Cetaruk, M.D., and rheumatologist Carlos Rose, M.D. (Exs. A-F.) Petitioner was relying upon reports by treating rheumatologist Deborah McCurdy, M.D., and immunologist Joshua Davidson, M.D., MPH, who provided reports endorsing the theory of autoimmune inflammatory syndrome induced by adjuvants ("ASIA"), a theory developed by Yehuda Shoenfeld. (Ex. 28.) In response to petitioner's first interim fee motion, respondent argued that petitioner did not have a reasonable basis for this petition because she had not demonstrated "a compensable, medically-recognized injury." (ECF No. 51, p. 6.) Respondent noted that a similar ASIA allegation had been previously rejected and also stressed that ASIA was never a part of Dr. McCurdy's own clinical assessment in her medical records. (*Id.* at n.3, p. 6.)

Although Special Master Millman was likewise concerned that "ASIA is not widely accepted in the medical community," she stressed that petitioner's medical records supported the presence of the symptoms alleged in the petition, further noted petitioner's contention that autoimmune illnesses are difficult to diagnose, and also suggested the medical records showed that petitioner had likely been ill following her vaccination. (ECF No. 60, p. 7.) She found that the case had a reasonable basis up to that point, despite her specific concerns regarding ASIA, because "Dr. McCurdy is a reputable doctor with excellent credentials, and her support of petitioner's theory gave petitioner a reasonable basis to move forward with her claim." (*Id.*) In particular, Special Master Millman stressed Dr. McCurdy's long-time role as the director of rheumatology at

---

[7] Both petitioner's motion for interim fees and Special Master Millman's decision awarding interim fees characterize Ms. Moss's exit as withdrawing (ECF No. 48, p. 1; ECF No. 60, p. 1.) In fact, Ms. Stadelnikas filed a consented motion to substitute as counsel. (ECF No. 49.)

Children's Hospital of Orange County, her role as a clinical professor at UCLA medical school, and her authorship of over 50 peer-reviewed research papers.  (*Id.*)  Thus, Special Master Millman suggested that it remained feasible based on the record at that time that a claim could be developed for an autoimmune condition grounded in rheumatology, though likely not reliant on the ASIA concept.

Significantly, however, departing counsel had apparently not by that time completed the record of the case.  (ECF No. 47.)  Just prior to Ms. Moss's departure, Special Master Millman noted that certain of the previously filed medical records were incomplete and ordered the filing of complete medical records from at least ten different physicians.  (*Id.*)  Collecting these medical records constituted the bulk of activity in this case from the time Ms. Stadelinkas entered her appearance in October of 2015 until Special Master Millman held a follow up status conference in May of 2016.  (ECF No. 71.)

During the May 2016 status conference, Special Master Millman explained upon review of the subsequently filed medical records that she had become concerned that petitioner's medical records now revealed a possible diagnosis of somatic disorder caused by anxiety and recommended for the first time that the case be dismissed.  (*Id.*)  Consistent with Special Master Millman's prior decision awarding interim attorneys' fees and costs – wherein reasonable basis was found based in significant part on the strength of Dr. McCurdy's status as a well-regarded treating rheumatologist – Ms. Stadelnikas requested an opportunity to consult a pediatric rheumatologist before determining how to proceed.  (*Id.*)  The remainder of Ms. Stadelnikas's tenure as counsel of record was devoted to seeking a causation opinion based in rheumatology and when she was unable to produce such a report she moved to withdraw as counsel on February 6, 2017.[8]  (ECF Nos. 72-78.)

Subsequent history shows, however, that in contrast to Ms. Stadelnikas's pursuit of a further rheumatology opinion, petitioner's third attorney, Ms. Gentry, has returned to pursuing this case under the broader ASIA theory about which Special Master Millman had previously expressed concern.[9]  Accordingly, petitioner's ultimate success or failure in proving the previously-questioned ASIA diagnosis and theory of causation (and the

---

[8] The process of determining whether an expert would opine was slowed by the fact that certain of petitioner's medical records were deemed illegible.  (ECF No. 72.)  Before securing an expert opinion, steps were initially taken to have these records clarified for expert review.  (ECF Nos. 72-73, 76.)

[9] Petitioner first filed an expert report by Drs. Mikovits and Ruscetti (subsequently struck by motion of petitioner) and later filed an expert report by Dr. Yehuda Shoenfeld.  (ECF Nos. 99-105, 122.)  Dr. Shoenfeld opined that petitioner suffered macrophagic myofasciitis syndrome and/or ASIA.  (Ex. 97, p. 30.)  Dr. Shoenfeld did include some broader catch-all language in his report suggesting that petitioner may alternatively have experienced "simply [a] vaccine reaction and subsequent autoimmune symptoms." (Ex. 97, p. 31.)  It is clear from review of his report as a whole, however, that his opinion is that petitioner's entire constellation of symptoms is best explained as ASIA.  Nothing in the record of this case, including Ms. Stadelnikas's billing records and invoices, suggests that she intended to pursue such a theory.  In fact, there is no indication Ms. Stadelinkas ever consulted Dr. Shoenfeld, despite the fact that petitioner's preceding and succeeding counsel both consulted him with regard to this specific case.  (ECF Nos. 40, 122.)

feasibility of doing so) largely poses a separate question from whether the objective evidence in this case provided a feasible platform for Ms. Stadelinikas's pursuit of a separate opinion regarding a rheumatologic injury.

At the time Ms. Stadelnikas entered this case the reasonable basis for the filing of the petition was confirmed by Special Master Millman's first interim fee decision with regard to a potential rheumatologic injury. Although she expressed concerns specific to the ASIA theory, Special Master Millman found that the case had a reasonable basis in light of petitioner's symptom presentation and the fact of her having a supportive opinion by her well-qualified treating rheumatologist, albeit based on a theory with which Special Millman had concerns. Ms. Stadelnikas's exploration of the merits of this case, which, in fact, served mainly to complete the filing of outstanding medical records, was limited and confined within the boundaries of feasibility described by Special Master Millman at the time. Accordingly, for the same reasons described in Special Master Millman's February 22, 2016 decision awarding interim attorneys' fees and costs, I now find that by that same rationale the reasonable basis for the filing of this petition did also extend to the point of Ms. Stadelnikas's withdrawal as counsel of record.

### b. Reasonableness of the Requested Award

#### i. Interim Attorneys' Fees

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera*, 515 F.3d at 1347. This is a two-step process. *Id.* at 1347-48. First, a court determines an "initial estimate…by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Id.* at 1348.

A reasonable hourly rate is "the prevailing market rate defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Avera*, 515 F.3d at 1348 (citation and quotation omitted). The decision in *McCulloch* provides a further framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *motions for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). The Office of Special Masters has

subsequently updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules for 2015-2016, 2017, 2018, 2019 and 2020 can be accessed online.[10]

In this case, petitioner is seeking $39,311.80 in interim attorneys' fees for work performed in 2015 through 2017.  I have reviewed the billing records submitted with petitioner's request, and in my experience, the hourly rates billed for 2015 through 2017 for attorney time and paralegal time, are all reasonable and in accord with prior awards made by other special masters as well as the above-discussed Attorneys' Forum Hourly Rate Fee Schedules.

Special masters may rely on their experience within the Vaccine Program to determine the reasonable number of hours expended.  *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 484 (1991), *rev'd on other grounds and aff'd in relevant part¸* 988 F.2d 131 (Fed. Cir. 1993).  It is well-established that billing for clerical and other secretarial work is not permitted in the Vaccine Program.  *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (denying an award of fees for time billed by a secretary and finding that "[these] services…should be considered as normal overhead office costs included within the attorneys' fees rates"); *Mostovoy v. Sec'y of Health & Human Servs.*, No. 02-10V, 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016).  Special masters have previously reduced the fees paid to petitioners due to excessive and duplicative billing.  *See Ericzon v. Sec'y of Health & Human Servs.*, No. 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reduced overall fee award by 10 percent due to excessive and duplicative billing); *Raymo v. Sec'y of Health & Human Servs.*, No. 11-654V, 2016 WL 7212323 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) (reduced overall fee award by 20 percent), *mot. for rev. denied*, 129 Fed. Cl. 691 (2016).  Special masters have also previously noted the inefficiency that results when cases are staffed by multiple individuals and have reduced fees accordingly.  *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009).  Additionally, special masters have previously found it reasonable to reduce the fees paid to petitioners due to billing for intra-office communication.  *Soto v. Sec'y of Health & Human Servs.*, No. 09-897V, 2011 WL 2269423, at *6 (Fed. Cl. Spec. Mstr. June 7, 2011); *Carcamo v. Sec'y of Health & Human Servs.,* No. 97-483V, 2011 WL 2413345, at *7 (Fed. Cl. Spec. Mstr. May 20, 2011).  Special masters can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond.  *See Sabella*, 86 Fed. Cl. at 729.

Turning to reasonable hours expended, I find that petitioner's prior counsel included entries that are duplicative and excessive due to attorney and paralegal billing for reviewing the same orders and/or reviewing status of case/case file.[11]  Further,

---

[10] Each of the Fee Schedules for 2015 through 2020 can be accessed at http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are derived from the decision in *McCulloch*, 2015 WL 5634323. The schedules for 2017, 2018, 2019, and 2020 are adjusted for inflation using the Producer Price Index for Offices of Lawyers ("PPI-OL").

[11] For example, there were duplicative and excessive entries for reviewing the same orders and/or reviewing the case file together on September 16, 2015, October 13, 2015, November 10, 2015, December 4, 2015, and August 8, 2016. These examples indicate various entries that are duplicative and excessive, however, this list is not exhaustive.

counsel billed for intra-office communication, including entries billed by attorney for "email to paralegal" and also entries billed by paralegals for "email to attorney. Send reply."[12]  Additionally, these intra-office communications are duplicative and excessive when the same correspondence is being sent and read by multiple paralegals.  Even further, counsel included entries that are deemed secretarial and/or clerical by nature, including paralegals billing for processing/sending payment/invoices.[13]  For all these reasons, I find a **5% reduction** ($1,965.59) of the interim attorneys' fee award to be reasonable.  A special master need not engage in a line-by-line analysis of petitioner's fee application when assessing fees.  *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).  Accordingly, petitioner is awarded a reduced amount of $37,346.21 in interim attorneys' fees.

## ii.  Interim Attorneys' Costs

Attorneys' costs must be reasonable as well.  *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992) ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both.  Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs.").  When petitioners fail to carry their burden, such as by not providing appropriate documentation to substantiate a requested cost, special masters have refrained from awarding compensation.  *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Human Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Here, petitioner requests $3,810.10 in interim attorneys' costs, mainly consisting of costs incurred in obtaining records and transcriptions.  Petitioner provided solely the office invoice of the total costs incurred, without any further supporting documentation such as receipts, specific invoices, or proofs of payment.  (*See* ECF No. 133-4.)  As stated above, this is petitioner's second request for these interim attorneys' fees and costs for Ms. Stadelnikas. Upon my review of the first motion, petitioner likewise failed to provide any supporting documentation at that time.  (ECF No. 77-2.)  Accordingly, I do not find the requested costs to be reasonable due to lack of supporting evidence.  Therefore, petitioner's request for attorneys' costs is denied in full.

---

[12] For example, there were entries billed for intra-office communication on February 10, 2016, February 19, 2016, February 23, 2016, February 24, 2016, March 3, 2016, March 24, 2016, September 8, 2016, and October 5, 2016.  These examples indicate various forms of intra-office communication that were billed.  This list is not exhaustive.

[13] For example, there were clerical/secretarial entries billed for processing and/or "send out" payment on March 2, 2016, May 26, 2016, June 6, 2016, June 8, 2016, October 4, 2016, October 24, 2016, and January 11, 2017.  Additionally, there were other entries billed that appear secretarial/clerical in nature, including "Open new client file," on September 9, 2015 and "Create new reminder and add case notes," on February 22, 2016.  This list consists of mere examples and not meant to be exhaustive.

## III.     Conclusion

In light of the above, petitioner's motion for an award of interim attorneys' fees and costs is hereby **GRANTED** and petitioner is awarded $37,346.21 in interim attorneys' fees and costs.

**Accordingly, I award the total of $37,346.21 as a lump sum in the form of a check jointly payable to petitioner and petitioner's prior counsel Diana L. Stadelnikas.**

The clerk of the court shall enter judgment in accordance herewith.[14]

**IT IS SO ORDERED.**

> **s/Daniel T. Horner**
> Daniel T. Horner
> Special Master

---

[14] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.